2011 BNH 010

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                                              Bk. No. 10-14548-JMD
                                                                    Chapter 11
Momenta, Inc.,
        Debtor


*Charles R. Bennett, Jr., Esq.*
*Christopher M. Condon, Esq.*
*John C. Elstad, Esq.*
*Murphy & King P.C.*
*Boston, MA*
*Attorneys for Debtor*

*David E. LeFevre, Esq.*
*Hage & Hodes, P.A.*
*Manchester, NH*
*Attorney for Ningbo Chenglu Paper Products Manufacturing Co.*


## **MEMORANDUM OPINION**

### I.  INTRODUCTION

Ningbo Chenglu Paper Products Manufacturing Co. ("Ningbo") filed a Motion for Payment of Administrative Expenses (Doc. No. 73) (the "Motion").  The United States Trustee ("UST") and Momenta, Inc. (the "Debtor") filed objections to the Motion (Doc. Nos. 85 and 86) (the "Objections").  The Court held a hearing on February 23, 2011, and continued the matter to April 7, 2011.  At the conclusion of the April 7 hearing, the Court directed the parties to file a proposed scheduling order to resolve the issues (Doc. No. 133).  On April 15, 2011, the Court entered a scheduling order that directed the Debtor and Ningbo to file a stipulation of facts and for each party to file a memorandum of law in support of its position (Doc. No. 141).  Ningbo

filed its memorandum of law on May 12, 2011 (Doc. No. 161) ("Ningbo's Memo") and the Debtor filed its memorandum of law on May 23, 2011 (Doc. No. 163) ("Debtor's Memo"). After the memoranda of law were filed, the Court took the matter under advisement.

Neither party submitted a stipulation of facts. However, Ningbo's Memo and the Debtor's Memo do contain mutual assertions of fact which are not disputed. Accordingly, the Court shall treat all mutually asserted undisputed facts as the factual record for the purposes of this decision. See In re Doolan, 447 B.R. 51, 57 (Bankr. D.N.H. 2011). The Court will use this factual record to determine the following issues of law: (1) whether Ningbo should be allowed an administrative expense claim pursuant to 11 U.S.C. § 503(b)(9) because the Debtor received goods from Ningbo within twenty days of the bankruptcy petition, and (2) whether any administrative expense claim held by Ningbo should be disallowed under 11 U.S.C. § 502(d) because Ningbo was allegedly the recipient of a transfer avoidable under 11 U.S.C. § 547.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

Based on the record, the Court makes the following findings. The Debtor filed a petition under chapter 11 of the Bankruptcy Code[1] on October 23, 2010. On December 6, 2010, Ningbo

---

[1] Unless otherwise indicated, all references to "Bankruptcy Code," "section" or "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

2

filed the Motion seeking the allowance of an administrative expense claim of $163,527.95.[2] The Motion concerns goods that were ordered by the Debtor from Ningbo and delivered to the Debtor or its customers. The orders are detailed in six invoices attached both to the Motion and Ningbo's Memo and described in the Debtor's Memo. Invoices 4095 and 4096 detail shipments of goods from Ningbo, China to the Debtor's customer in Felixstowe, United Kingdom with balances due in the amount of $39,281.04 and $39,024.72 respectively. Invoice 4093 details a shipment of goods from Ningbo, China to the Debtor's customer in Southampton, United Kingdom with a balance due in the amount of $57,780. Invoice 4090 details a shipment of goods from Ningbo, China to the Debtor's customer in Montreal, Canada and has a balance due in the amount of $6,250.92. There is no record as to what happened to the shipments in invoices 4095, 4096, 4093 and 4090 (the "Drop Shipments") when they are arrived at Felixstowe, Southampton, and Montreal (i.e. were they placed in a warehouse, held by a customs agent, delivered to a common carrier, held by a bailee, etc.). In addition, samples worth $1,873.68 were delivered directly to the Debtor as part of the Drop Shipments ("Samples"). Finally, goods in invoices 4104 and 4102 were delivered to the Debtor's warehouse and the invoices have balances due in the amount of $1,529.91 and $19,661.36 respectively. The total balance due on all of the invoices is $163,527.95.

The Debtor concedes that all of the shipments were received within twenty days of the petition date.[3] The Debtor further concedes that the Samples, invoice 4104, and invoice 4102

---

[2] The Motion requested allowance of an administrative claim of $167,918.46. However, Ningbo's Memo reduced the request to $163,527.95.

[3] The Drop Shipments have varying actual and estimated arrival and destination dates. It is not clear what the difference is between the arrival date and the destination date. However, all

3

give rise to an administrative expense claim of $23,070.95 since they were received by the Debtor within twenty days of the petition date. The parties dispute whether the Drop Shipments were "received by the debtor" within twenty days of the petition date within the meaning of § 503(b)(9) and whether any administrative expense claim should be disallowed under § 502(d). The definition of "received by the debtor" as used in § 503(b)(9) and the applicability of § 502(d) to administrative expense claims are issues of law.

### III. DISCUSSION

The Court will first address whether the Drop Shipments were "received by the debtor" under § 503(b)(9), giving rise to an administrative expense claim, and then whether any administrative expense claim arising under § 503(b)(9) may be disallowed under § 502(d) due to an alleged preference claim against Ningbo.

#### A. Received by the Debtor

Administrative expense claims are allowed under the provisions of § 503 of the Bankruptcy Code. "An entity may timely file a request for payment of an administrative expense claim." 11 U.S.C. § 503(a). After notice and a hearing, the administrative expense claim shall be allowed for any items listed in subsection (b). 11 U.S.C. § 503(b). Allowance of an administrative expense claim may be a material event in a chapter 11 case. Unless otherwise agreed, the holder of an administrative expense claim must receive cash equal to the amount of their claim on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). As a result, allowance

---

dates are within twenty days of the petition date and the Debtor's Memo states that all goods were "delivered" within twenty days.

of a significant administrative expense claim may require a chapter 11 debtor to have a large cash reserve available on the date of confirmation.  See In re Plastech Engineered Prods, Inc., 394 B.R. 147, 151 (Bankr. E.D. Mich. 2008).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added three new categories of administrative expense claims to § 503(b).  Among the new categories is § 503(b)(9), which grants an administrative expense claim for "the value of goods <u>received by the debtor</u> within 20 days before the date of commencement of a case under this title in which goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9) (emphasis added).  The new subsection elevates certain prepetition unsecured obligations to a seller of goods, who would otherwise only have a general unsecured claim, to a priority administrative expense claim.  Despite the potential significance of this additional priority administrative expense, there is little legislative history regarding the addition of § 503(b)(9).  Id.

The phrase "received by the debtor" is not a term of art nor is it a defined phrase in the Bankruptcy Code.  The dispute in this case involves the meaning of this phrase.  In determining the meaning of the phrase, a "court should not confine itself to examining a particular statutory provision in isolation.  The meaning–or  ambiguity–of certain words or phrases may only become evident when placed in context."  F.D.A. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000) (citations omitted).

> It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  A court must therefore interpret the statute "as a symmetrical and coherent regulatory scheme," and "fit, if possible all parts into a harmonious whole."

5

Id.

The context of the Bankruptcy Code provides a direct link to the origin and purpose of the phrase.  Section 503(b)(9) is directly referenced in 11 U.S.C. § 546(c).  Section 546(c)(1) addresses a seller's right of reclamation and § 546(c)(2) states that "[i]f a seller of goods fails to provide notice in the manner described in paragraph (1), the seller may still assert the rights contained in section 503(b)(9)."  Therefore, § 503(b)(9) provides a seller, who did not comply with the notice requirements of § 546(c)(1), an alternative remedy to reclamation.  Furthermore, the section of BAPCPA that created § 503(b)(9) was titled "Reclamation" and was the same section that amended § 546(c).  In addition, pre-BAPCPA caselaw provides further evidence that §§ 503(b)(9) and 546(c) are closely related.  When Congress amends bankruptcy laws, "it does not write on a clean slate" and courts should not effect major changes without at least some discussion in the legislative history.  In re Dana Corp., 367 B.R. 409, 417 (Bankr. S.D.N.Y. 2007) (citing Dewsnup v. Timm, 502 U.S. 410, 419 (1992)).  Prior to the enactment of BAPCPA, there were multiple decisions where courts granted sellers administrative expense claims as a substitute to the right of reclamation.  See e.g., Flav-O-Rich, Inc., v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.), 846 F.2d 1343 (11th Cir. 1988); Collingwood Grain, Inc. v. Coast Trading Co, (In re Coast Trading Co.), 744 F.2d 686 (9th Cir. 1984); In re Lawrence Paperboard Corp., 52 B.R. 907 (Bankr. D. Mass. 1985); Party Packing Corp. v. Rosenberg (In re Landy Beef Co.), 30 B.R. 19 (Bankr. D. Mass. 1983).  These pre-BAPCPA decisions establish a long history connecting administrative expense claims to the right of reclamation.  Therefore, based on the express language of the Bankruptcy Code, its legislative

history, and pre-BAPCPA practice, §§ 503(b)(9) and 546(c) are related provisions that should be read together.

Since Article 2 of the Uniform Commercial Code's ("UCC") right to reclamation lead to the enactment of § 546(c), it also proffers guidance in interpreting § 503(b)(9).  As part of the Bankruptcy Reform Act of 1978, Congress adopted § 546(c) to resolve the question of whether the right of reclamation in UCC § 2-702(2) applies to a debtor in bankruptcy.  Montello Oil Corp. v. Marin Motor Oil, Inc., 740 F.2d 220, 223 (3rd Cir. 1984).  Section 2-702(2) states that

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply.  Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

UCC § 2-702(2).  The drafters of the Bankruptcy Code essentially adopted UCC § 2-702(2) by enacting § 546(c), but with modifications.[4]  Later, BAPCPA made further modifications to § 546(c).  However, even after the BAPCPA amendments, § 546(c) does not create an independent federal right of reclamation but simply allows a seller to exercise its state law remedies under the UCC with certain limitations.  Dana, 367 B.R. at 414, 416.  Since Congress borrowed from the UCC when enacting § 546(c), courts have found the UCC relevant when interpreting that section.  Marin, 740 F.2d at 225 n.9.  In turn, the same UCC provisions are relevant when interpreting the requirements of § 503(b)(9).

---

[4] For example, "[s]ection 546(c) does not include the second half of section 2-702(2) which provides that the ten-day limitation does not apply where the buyer makes a written misrepresentation of solvency to the seller within three months prior to deliver."  Marin, F.2d at 223 n.5.

### 1. Defining "Received"

The terms "received" and "receipt" are not defined in the Bankruptcy Code. The terms may have a number of legally significant meanings. For example, are "goods received by the debtor" when the risk of loss passes, when title passes, or when a party takes possession of them? Since "received" is not defined in the Bankruptcy Code, courts have uniformly looked to the definition of "receipt" as stated in the UCC. In re Circuit City Stores, Inc., 432 B.R. 225, 228 (Bankr. E.D. Va. 2010); In re Pridgen, No. 007-04531-8-RDD, 2008 WL 1836950, at *4 (Bankr. E.D.N.C. Apr. 22, 2008); In re R.F. Cunningham & Co., No. 805-84105-511, 2006 WL 3791329, at *2 (Bankr. E.D.N.Y. Dec. 21, 2006). "The UCC does not define 'received,' but it does define 'receipt' of goods as 'taking physical possession of them.' UCC § 2-103(c)." Circuit City, 432 B.R. at 228. Likewise, the Bankruptcy Code does not define either term, but they are both used in § 546(c). The Court agrees with Circuit City that the terms "receipt" and "received" are similar words, concern related issues, and should be treated as functional equivalents and interpreted identically. Id. at 229 (citing Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003)). Because §§ 546(c) and 503(b)(9), were enacted or amended together as part of BAPCPA and because both sections concern remedies for sellers of goods with reclamation rights, the court in Circuit City held that the words should be interpreted identically in both sections. Id. This Court agrees with the rationale of Circuit City and holds that the term "received" in § 546(c) is the equivalent of "receipt" in the UCC, and the term "received" in § 503(b)(9) shall be interpreted identically.

In the present case, Ningbo does not contest that the Court should look to the UCC to determine what "received by the debtor" means in § 503(b)(9). Instead Ningbo argues that, with

regard to the right of reclamation, the UCC contemplates that "received" by a buyer includes possession by a third party purchaser and that concept spills over into § 503(b)(9).  Ningbo relies on the scheme of the right of reclamation in Article 2 to show that "received" in § 2-702(2) is broader than mere physical possession.  The Debtor argues that because it never took physical possession of the Drop Shipments, the goods were never "received by the debtor."  Because the term "physical possession" is not defined in the Bankruptcy Code, the Court shall review the context of §§ 546(c) and 509(b)(9) and the interpretation of "physical possession" under the UCC.

### 2. What is Possession Under the UCC

The term "possession" is not defined by the UCC.  Possession may mean physical possession or constructive possession, or both.  See In re Western Iowa Limestone, Inc., 538 F.3d 858, 863 (8th Cir. 2008).  Article 2 of the UCC defines "receipt of goods" as "taking physical possession of them."  UCC § 2-103(c).  The Debtor argues that for a seller to have a right of reclamation pursuant to UCC § 2-702(2), the buyer must have "received the goods" by taking physical possession of them.  Therefore, where the buyer never had physical possession of the goods, the buyer never received the goods, and the seller would not have the right to reclaim them.  In Coast Trading, a pre-BAPCPA case, then Circuit Judge Kennedy wrote that delivery directly to a third party, who was a good faith purchaser for value, precluded the seller's right of reclamation because the buyer was not in possession of the goods.  744 F.2d at 690.  The crux of the Debtor's argument is that because the definition of "received" in § 503(b)(9) is the same as in UCC § 2-702, a seller who delivers goods directly to a third party could not have an administrative expense claim under § 503(b)(9) because the debtor/buyer never took physical

possession of the goods and therefore never received them. However, in Coast Trading, the buyer never had physical or constructive possession of the goods. Hence, that case does not preclude the argument that a buyer who had constructive possession of goods still may have "received" those goods within the meaning of the statute.

UCC §§ 2-702 and 2-705 are complimentary and when read together expand the definition of "receipt." Marin, 740 F.2d at 226 n.13; Cunningham, 2006 WL 3791329, at *2. The preface to UCC § 2-103 states that words may have different definitions if context otherwise requires. See Marin, 740 F.2d at 226 n.13. UCC § 2-702(1) provides that when a seller discovers its buyer to be insolvent, it may refuse delivery, except for cash payments, or stop delivery under UCC § 2-705. UCC § 2-705(2) sets forth four events that terminate a seller's right to stop goods in transit.[5] Only one of those events involves the buyer taking physical possession of the goods. See UCC § 2-705(2)(a). The other three events all involve a form of constructive receipt by the buyer. See UCC § 2-705(2)(b)-(d); see also Marin, 740 F.2d at 226 n.13. Under the UCC, the right of reclamation arises after the right to stop delivery terminates. Marin, 740 F.2d at 226. Moreover, UCC § 2-702(2) provides that the right of reclamation arises only when an insolvent buyer has "received [the] goods." Therefore, when UCC § 2-702 is read in context of UCC § 2-705, the term "receives" must include the three forms of constructive

---

[5] As against such buyer the seller may stop delivery until:

    (a)    receipt of the goods by the buyer; or
    (b)    acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
    (c)    such acknowledgment to the buyer by a carrier by reshipment or as warehouseman; or
    (d)    negotiation to the buyer of any negotiable document of title covering the goods.

possession listed in UCC § 2-705(2). Id. at 226 n.13. This reading of the statute is further supported by comment 1 to UCC § 2-702 which states that "the concept of stoppage has been extended to include goods in the possession of any bailee who has not yet attorned to the buyer." Accordingly, the UCC provides a seller with the right to stop goods being shipped to an insolvent buyer until the buyer receives the goods by either having physical possession or by having constructive possession in one of the three forms listed in UCC § 2-705(b). After a buyer has received goods in one of the ways listed in UCC § 2-705(b), the right to stop delivery ends and the right to reclaim arises.

Section 546(c) is derived from UCC § 2-702 and permits sellers of goods to exercise some of their state law reclamation rights against a debtor. Dana, 367 B.R. at 414, 416. As a result, the interpretation of certain aspects of reclamation rights under the UCC is relevant to interpreting § 546(c). In Marin, the parties disputed the date goods were received under § 546(c). 740 F.2d at 222. In that case, the seller contracted to sell and deliver gasoline to the debtor FOB New York Harbor. Id. The debtor arranged to have a commercial barge, operated by a common carrier, pick up the gasoline from the seller's terminal in New York harbor. Id. The barge then delivered the gasoline to Cities Service Companies' terminal in New Jersey where the debtor had storage rights pursuant to a terminal agreement with Cities. Id. The court in Marin held that the goods were received when the gasoline was pumped into the debtor's storage facility in Cities' terminal because "[the debtor] had constructive possession under [UCC] § 2-705(2) and [the seller's] right to stop delivery terminated and its right to reclaim goods under UCC § 2-702(2) arose." Id. at 226.

The same interpretation must apply to § 503(b)(9) because it is related to, and a part of the remedies provided under the provisions of § 546(c). A seller must be entitled to an administrative expense claim where a debtor received goods, by having either physical possession or constructive possession as specified in UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case. Consequently, a seller may have an administrative expense claim in a drop shipment situation, so long as the debtor at some point had constructive possession of the goods. In the present case, Ningbo shipped goods by sea to Felixstowe, United Kingdom. The record is void of any other details regarding the treatment of the shipment. Ningbo's right to an administrative claim depends on the chain of possession the goods passed through, up to the point of delivery to the Debtor's customer. If, as in Marin, the goods arrived at the port in England and were attorned to the Debtor at a storage facility or through receipt by a customs agent, Ningbo might have an administrative expense claim if the Debtor had constructive possession of the goods, because the Debtor would have received the goods. However, if the goods passed from one common carrier to another, until ultimately reaching the third party purchaser, the goods were never received by the Debtor and Ningbo would have no right to an administrative expense claim.

The difference between the two situations may seem unnecessarily technical, but it is the scheme adopted by BAPCPA. A seller in the latter example is no worse off than it would have been outside of bankruptcy because once the goods are delivered to a third party good faith purchaser, the seller would no longer have a right to reclaim and would become an unsecured creditor. In the former example, a seller would have an administrative expense claim if the buyer/debtor took constructive possession of the goods for even a moment. Similarly, if a seller

12

delivered goods directly to a buyer/debtor who had physical possession of the goods for a split second and then shipped the goods to a third party immediately, it is inarguable that the seller would have an administrative expense claim as long as that split second of physical possession occurred within twenty days of the bankruptcy petition.

Accordingly, if the Debtor had physical or constructive possession of any goods delivered in a drop shipment, within the meaning of UCC § 2-705(2), within twenty days of the commencement of the bankruptcy case, Ningbo may have an administrative claim under § 503(b)(9). The record in this case fails to establish, or even suggest, any physical or constructive possession by the Debtor in reference to any of the Drop Shipment transactions. Accordingly, Ningbo has no administrative claim under § 503(b)(9) for any amounts due for the Drop Shipments.

### B.  § 502(d) Disallowance

The second issue before the Court is whether an administrative expense claim allowed under § 503(b)(9) is subject to disallowance under § 502(d). See In re Durango Georgia Paper Co., 297 B.R. 326, 327 (Bankr. S.D. Ga. 2003). This is an issue of first impression in this circuit and courts around the country are split as to whether § 502(d) applies to administrative expenses at all. The majority view is that § 502(d) is not applicable to administrative expense claims. ASM Capital, LP v. Ames Dep't Stores, Inc., (In re Ames Dep't Stores), 582 F.3d 422 (2d Cir. 2009); Plastech, 394 B.R. at 147; In re Roberds, Inc., 315 B.R. 443 (Bankr. S.D. Ohio 2004); Durango, 297 B.R. at 326; In re CM Holdings, Inc., 264 B.R. 141 (Bankr. D. Del. 2000). The minority position is that § 502(d) applies to all claims, including administrative expenses. In re MicroAge, Inc., 291 B.R. 503 (B.A.P. 9th Cir. 2002); In re Circuit City Stores, Inc., 426 B.R.

560 (Bankr. E.D. Va. 2010).  A claim is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . ."  11 U.S.C. § 101(5).  The terms "claims" and "expenses" are not mutually exclusive labels as several provisions in the Bankruptcy Code include administrative expenses within the claims label.  Durango, 397 B.R. at 330 (citing MicroAge, 291 B.R. at 508 (listing § 346(e), § 348(d), § 726(b) & (c), § 1226(a), § 1326(a)(2) & (b)(1), § 752(a) and § 1123(a)(1) as examples of administrative expenses referred to as a type of claim).  For example, the provision discussed earlier in this opinion, § 546(c)(2), refers to a "claim of the kind specified in section 503(b)(9)."  These provisions only reflect that the definition of claim in the Bankruptcy Code is broad enough to include administrative expenses, but they do not override the specific processes outlined in sections 501, 502, and 503 for allowance of claims and expenses.  Id.

Allowance of administrative expenses and allowance of claims are separate and distinct mechanisms.  Sections 501 and 502, together, prescribe the procedures for the filing and allowance of prepetition claims and postpetition claims which are allowed as prepetition claims. Ames, 582 F.3d at 430.  Section 501 describes who may timely file a proof claim in subsections (a), (b), and (c).  Section 502(a) states that a proof of claim filed under § 501 is deemed allowed unless a party in interest objects.  Where there is an objection to a proof of claim filed under § 501, the court must allow the claim after notice and a hearing, unless the claim is of the type listed in § 502(b)(1)-(9).  "Section 502, in conjunction with section 501, provides a procedure for the allowance of claims that is entirely separate from the procedure for the allowance of administrative expenses under section 503."  Id. at 429.

Section 503, titled allowance of administrative expenses, stands alone. Subsection (a) of § 503 states that an entity may "request" payment of an administrative expense and subsection (b) allows the administrative expense after notice and a hearing. Thus, unlike §§ 501 and 502, § 503 is the sole provision used for the request and allowance of an administrative expense. Furthermore, § 503(a) requires a "request" for an administrative expense not the filing of a proof of claim, as required by § 501. In fact, official form B10, used for filing proofs of claims, specifically states that "[t]his form should not be used to make a claim for an administrative expense." Id. at n.4. The terms expenses and claims, though not mutually exclusive, are often used separately throughout the Bankruptcy Code. For instance, 11 U.S.C. § 507(a) establishes separate priority for administrative expenses and for claims. Id. at 429. Also, 11 U.S.C. § 348(d)[6] treats administrative expenses separately from other claims upon conversion of a case. CM Holdings, 264 B.R. at 158. In conclusion, expenses requested under § 503 are distinct from claims filed under § 501.

Turning to § 502(d), this provision is used to disallow claims filed under § 501 and allowed by § 502. The issue is whether § 502(d) can also disallow administrative expenses allowed under § 503(b). This Court determines that it cannot. Statutory interpretation must start with the plain language of the statute. Ames, 582 F.3d at 427.

---

[6] "A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such a claim had arisen immediately before the date of the fling of the petition." 11 U.S.C. § 348(d) (emphasis added).

> Accordingly, [the Court] begins with the language of section 502(d), which provides in full: <u>Notwithstanding subsections (a) and (b) of this section</u>, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(I), 542, 543, 550, or 553 of this title.

<u>Id.</u> (emphasis added). The introduction to § 502(d) states "[n]otwithstanding subsections (a) and (b) of this section," which indicates "that the only claims to which subsection (d) applies are those that would otherwise have been allowed pursuant to subsections (a) and (b)" of § 502. <u>Id.</u> Applying § 502(d) to all claims, including administrative expenses, would make the phrase "notwithstanding subsections (a) and (b) of this section" wholly unnecessary. <u>Plastech</u>, 394 B.R. at 161. It is "a cardinal principle of statutory construct that courts must give effect, if possible, to every clause and word of a statute." <u>Williams v. Taylor</u>, 529 U.S. 362, 363 (2000). "To construe § 502(d)'s disallowance as applicable to expenses allowable under § 503—a section with its own scope, purpose and conditions—is to expand the scope of § 502(d)'s disallowance beyond its plain meaning." <u>Durango</u>, 297 B.R. at 330. Thus, the opening sentence to § 502(d) limits its scope to claims allowed under § 502.

Furthermore, § 502(d) is not applicable to § 503(b) because both are written with mandatory language without a qualifying clause. See <u>Durango</u>, 297 B.R. at 331. Pursuant to § 503, expenses listed in subsection (b) "shall be allowed" after notice and a hearing. Section 502(b) also requires the court to allow claims as long as they are not of the type described in subsections (b)(1)-(9). At the same time, § 502(d) states that the court "shall disallow" a claim of any entity from which property is recoverable. However, § 502(d) expressly takes precedence over § 502(b) because the introductory sentence states "notwithstanding subsections (a) and (b)

16

of this section." See Ames, 582 F.3d at 431. There is no such qualifying language in § 502(d) referring to § 503 and § 503 contains no language that makes it conditional to § 502(d). Subjecting § 503 requests to the disallowance provision of § 502(d) would create an unnecessary conflict between two mandatory sections. A court would be required to both allow a valid § 503(b) administrative expense and to disallow it if the requesting entity holds recoverable property. See Durango, 297 B.R. at 331. An interpretation where one mandatory provisions trumps another is not preferred and should be avoided. See Marsono v. Laird, 412 F.2d 65, 70 (2d Cir. 1969).

In contrast to this Court's views, the court in MicroAge held that § 502(d) applies to all claims and expenses as supported by the plain language of the statute and its legislative history. 291 B.R. at 508. The MicroAge court determined that because § 502(d) states that the court shall disallow "any claims," § 502(d) must apply to administrative expenses because expenses are a type of claim. Id. Yet, the decision in MicroAge completely ignores the opening salvo to § 502(d), which says "[n]otwithstanding subsections (a) and (b) of this section." As mentioned earlier, if § 502(d) simply applies to all claims and expenses, there would be no need for that statement. The MicroAge court also stated that because § 57g of the Bankruptcy Act, the precursor to § 502(d), applied to administrative claims, then § 502(d) must as well because its adoption was not an intended departure from existing law. Id. But, as the court in Ames explained, the authority on § 57g at the time the Bankruptcy Code was enacted was unclear. 582 F.3d at 431-32 n.6. There was only one Court of Appeals case from the Eighth Circuit that held § 57g applied to administrative expenses. Id. (citing Weber v. Mickelson (In re Colonial Servs. Co.), 480 F.2d 747 (8th Cir. 1973)). That case simply stated that "the plain, unequivocal

language of the statute mandates surrender of a voided preference before a claim can be allowed." Colonial Servs., 480 F.2d at 749. Considering that the language of the statue has changed and the reasoning of the Colonial Services opinion is undeveloped, this Court agrees with the Ames decision that found Colonial Services as weak authority to conclude that Congress understood § 57g to apply to administrative expenses and intended the same result for § 502(d). Ames, 582 F.3d at 432 n.6.

      Finally, the Court concludes that its analysis of § 502(d) does not change just because § 503(b)(9) is an administrative expense that arises prepetition. Plastech, 394 B.R. at 163. First, § 503(b)(9) is not the only administrative expense that derives from a prepetition obligation. Id. Both §§ 503(b)(3) and (4), which are pre-BAPCPA provisions, grant an administrative expense claim as a result of a prepetition obligation. Id. Second, there is nothing in § 503(b) that distinguishes one administrative expense from the others regarding their payment, allowance, or priority. Id. Further, § 503(b)(9) has no legislative history that suggests it should be treated differently than any other administrative expense. Id. The court in Circuit City held otherwise. In Circuit City, the court concluded that Federal Rule of Bankruptcy Procedure 3003(c) requires a holder of a § 503(b)(9) administrative expense to file a proof of claim under § 501. 426 B.R. at 570. The court reasoned that Rule 3003(c) says "any creditor . . . shall file a proof of claim." Id. Since a creditor is defined as an "entity that has a claim against the debtor that arose . . . before the order for relief," a § 503(b)(9) administrative expense holder must file a proof of claim according to Rule 3003(c). Id. According to the Circuit City case, "if a 'creditor' wishes to be granted an administrative priority under § 503(b)(9), then the creditor must, first, file a proof of claim under § 501, second, have the claim allowed under § 502, and then third, request

administrative expense priority under § 503(a)."  Id.  The Circuit City court's framework adds a requirement to allowance of administrative expense claims that is in conflict with the Bankruptcy Code.  The Circuit City court's holding ignores the distinct processes allowing § 503 administrative expenses and § 501 claims discussed earlier in this opinion.  Subsection (a) of § 503 states an entity must "request" an administrative expense claim, not file a proof of claim.  Section 503(b) clearly states that an administrative expense requested under one of the nine categories listed in subsection (b) "shall be allowed" and contains no language that makes allowance conditional on filing a proof of claim.  Rule 3003(c) is only mandatory if a creditor seeks to have a proof of claim allowed.  In fact, the rule very clearly states that the consequences of failing to file a proof of claim results in the entity not being treated as a creditor with respect to such claim for purposes of voting and distribution.  Thus, nothing in Rule 3003(c) prevents an entity from "requesting" an administrative expense claim under § 503(a).  Consequently, nothing in Rule 3003(c) lends support that a § 503(b)(9) administrative expense claim can be disallowed by § 502(d).

Here, the Debtor admits that Ningbo holds an administrative claim of $23,070.95.  Because § 502(d) is inapplicable to administrative expense claims, including an expense requested under § 503(b)(9), the claim shall be allowed in the amount of $23,070.95.

**IV.  CONCLUSION**

Ningbo has filed a request for an administrative expense claim for six invoices shipped to the Debtor and its customers.  The Debtor argues that Ningbo is not entitled to an administrative expense claim because the Drop Shipments were not "received by the debtor" under § 503(b)(9)

and because any administrative expense claim should be disallowed under § 502(d) since Ningbo is the holder of recoverable property. For the reasons set forth in this opinion, the Drop Shipments were not "received by the debtor" as required by § 503(b)(9), and therefore Ningbo's request for allowance of an administrative expense claim in connection with those shipments shall be disallowed. Ningbo's request for an administrative expense claim of $23,070.95, shall be allowed because it meets the requirements of § 503(b)(9) and cannot be disallowed under § 502(d). This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.


Date:   August 19, 2011                   /s/ J. Michael Deasy
                                          J. Michael Deasy
                                          Bankruptcy Judge